IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FRANK CORTESE,                          §
                                        §
                    Plaintiff,          §
                                        §   Civil Action No. 3:15-CV-0622-D
VS.                                     §
                                        §
EVOLVE BANK & TRUST,                    §
                                        §
                    Defendant.          §

MEMORANDUM OPINION
AND ORDER

        Defendant's motion to transfer under 28 U.S.C. § 1404(a) turns on a consideration,

not only of the traditional private- and public-interest factors, but of a factor that is not found

in the traditional, non-exclusive list: the clear inconvenience that would result from severing

and transferring a compulsory counterclaim that is governed by a forum selection clause,

thereby leaving the parties to litigate closely-related claims and counterclaims in two fora.

For the reasons that follow, the court grants the motion and transfers this action to the

Western District of Tennessee, Memphis Division.

I

        Plaintiff Frank Cortese ("Cortese") brought this suit against defendant Evolve Bank

& Trust ("Evolve") in Texas state court, alleging claims for breach of a separation

agreement, breach of an employment agreement, and quantum meruit.  Evolve removed the

case to this court based on diversity of citizenship, and it now moves to transfer the case to

the Western District of Tennessee, Memphis Division, under 28 U.S.C. § 1404(a).

The facts pertinent to deciding Evolve's motion are largely undisputed. In 2014 Cortese entered into a Loan Production Officer Management Agreement ("Employment Agreement") with Evolve. The Employment Agreement includes the following Forum Selection Clause:

> [Cortese and Evolve] hereby agree[] that the State of Tennessee shall have the exclusive jurisdiction to hear and determine any and all disputes, controversies, or claims arising out of or relating to this Agreement, or concerning the rights of parties hereunder and, for such purposes, do hereby submit themselves to the sole personal jurisdiction of those Courts.

D. App. 8. The Employment Agreement also provides that it "shall be subject to and governed by the laws of the State of Tennessee, irrespective of the fact that a party is or may become a resident of a different state." *Id*.

After Evolve allegedly refused to pay Cortese for services performed in August and September 2014, Cortese and Evolve mutually agreed to end Cortese's employment on October 15, 2014 under the terms of a Separation Agreement and Release ("Separation Agreement"). Cortese continued to provide services for Evolve through October 15, 2014. He contends that Evolve failed and refused to pay him what he was owed under the Separation Agreement.

Cortese then filed this lawsuit against Evolve in Texas state court, alleging claims for breach of the Employment Agreement, breach of the Separation Agreement, and quantum meruit. In Evolve's answer, it asserted compulsory counterclaims for breach of the Employment Agreement and breach of the Separation Agreement. It then removed the case

to this court and moved under 28 U.S.C. § 1404(a) to transfer the case to the Western District of Tennessee based on the Forum Selection Clause in the Employment Agreement. Cortese then amended his complaint to drop his breach of contract claim based on the Employment Agreement and allege a breach of contract claim based only on the Separation Agreement. *See* Am. Compl. ¶ 13 ("Plaintiff is not asserting any claims for breach of the Employment Agreement." (emphasis omitted)). At the same time, he filed a response opposing Evolve's motion to transfer.

## II

28 U.S.C. § 1404(a) codifies "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, ___ U.S. ___, 134 S.Ct. 568, 580 (2013). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In cases where there is no forum selection clause, district courts "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 134 S.Ct. at 581. They analyze § 1404(a) motions under the familiar private-and public-interest factors[1] and "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 581 (quoting

---

[1]In *Atlantic Marine* the Court identifies nonexclusive private-and public-interest factors. *Atl. Marine*, 134 S.Ct. at 581 n.6.

§ 1404(a)).

But in cases where there is a valid forum selection clause, "[t]he calculus changes," because the clause "'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In that circumstance, district courts must "adjust their usual § 1404(a) analysis in three ways." *Id.* "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer . . . should not consider arguments about the parties' private interests." *Id.* at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* Accordingly, in a case involving a forum selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575.

### III

As a preliminary matter, the court must decide whether the merger clause in the Separation Agreement ("Entire Agreement Clause") precludes Evolve from relying on the Forum Selection Clause in the Employment Agreement as a basis for transferring this case.

A

Cortese and Evolve agree that the Separation Agreement is a valid and enforceable contract.[2] Cortese posits that the Separation Agreement—which does not contain a forum selection clause—supersedes the Employment Agreement, thereby invalidating the Employment Agreement's Forum Selection Clause. He cites the Tennessee doctrine of merger, contending that although the Separation Agreement and Employment Agreement deal with the same subject matter (i.e., the terms of Cortese's compensation), the Separation Agreement was executed seven and one-half months after the Employment Agreement and is the last contract that embodies the true agreement. On this basis, he maintains that the Separation Agreement invalidates the Forum Selection Clause found in the earlier Employment Agreement. Evolve does not respond to Cortese's argument that the Separation Agreement supersedes and invalidates the terms of the Employment Agreement.

B

Under Tennessee law,[3] "[a] cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (citation omitted). "In interpreting the contractual language, courts look to the

---

[2]*See* Am. Compl. ¶ 15 ("Plaintiff and Defendant entered into a valid and enforceable Separation Agreement."); Ans. & Counterclaim ¶ 37 ("Cortese and Evolve entered into a valid and enforceable Separation Agreement.").

[3]Tennessee law governs the interpretation of the Separation Agreement. *See* Am. Compl. Ex. C at 5 ("This agreement shall be construed in accordance with the laws of the state of Tennessee.").

plain meaning of the words in the document to ascertain the parties' intent." *Id.* (citation omitted). "The proper construction of a contractual document is not dependent on . . . any single provision of it, but upon the entire body of the contract and the legal effect of it as a whole." *Aetna Cas. & Sur. Co. v. Woods*, 565 S.W.2d 861, 864 (Tenn. 1978) (citation omitted). "The whole contract must be considered in determining the meaning of any or all of its parts." *Id.* (citations omitted). "The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) (citing *Davidson v. Davidson*, 916 S.W.2d 918 922-23 (Tenn. Ct. App.1995)).

To determine whether the Separation Agreement supersedes the entire Employment Agreement and invalidates the Forum Selection Clause, the court turns to the merger clause in the Separation Agreement—the Entire Agreement Clause—which provides:

> *Entire Agreement.* This Agreement constitutes the entire understanding and agreement between the parties as to the subject matter hereof and supersedes all other oral or written promises or representations. [Cortese] acknowledges and agrees that no representation, promise, inducement, or statement of intention has been made by any Released Party that is not expressly set forth in this Agreement. No party hereto shall be bound by, or liable for, any alleged representation, promise, inducement, or statement of intention not expressly set forth in this Agreement. This Agreement cannot be amended, modified, or supplemented in any respect, except by a subsequent written agreement signed by all Parties.

Am. Compl. Ex. C at 5. Elsewhere, however, in the clause that covers "Return of Assets; Confidential Information; Non-Competition," the Separation Agreement states that it "*does*

- 6 -

*not supersede or replace* [the] Employment Agreement," which will remain in effect until the Separation date [i.e., October 15, 2014]." *Id.* at 3 (emphasis and bracketed material added). The clause also specifies a nonexclusive list of provisions of the Employment Agreement that "survive the termination of the Employment Agreement and remain in full force and effect." *Id.*

"All clauses and provisions of [a] contract should, if possible, be so construed as to harmonize with one another . . . [a]nd [t]he whole agreement should, if possible, be construed so as to conform to an evident consistent purpose." *State ex rel. Neff v. Cotton Belt Ins. Co.*, 1987 WL 28386, at *6 (Tenn. App. Dec. 23, 1987) (unpublished opinion). The interpretation should give reasonable meaning to all the agreement's provisions, without rendering portions of it neutralized or without effect. *Maggart*, 259 S.W.3d at 704. In order to harmonize the Separation Agreement's Entire Agreement Clause with its clause that states that it does not supersede or replace the Employment Agreement and that a nonexclusive list of provisions of the Employment Agreement survive the termination of the Employment Agreement and remain in full force and effect, the court interprets the Entire Agreement Clause to be a merger clause that applies only to the Separation Agreement itself. In other words, it operates as to the Separation Agreement in the same way as does any merger clause. But it does not abrogate the Employment Agreement or invalidate the Forum Selection Clause. To hold that it does would neutralize or render without effect other terms of the Separation Agreement that provide that specific provisions of the Employment Agreement survive the termination of the Employment Agreement and remain in full force and effect. Therefore,

concluding that the better interpretation of the Separation Agreement is that its merger clause governs the Separation Agreement without abrogating the Employment Agreement (or invalidating its Forum Selection Clause), the court rejects Cortese's argument to the contrary.

## IV

Having determined that the Forum Selection Clause has not been invalidated by the Separation Agreement, the court now considers whether Evolve's compulsory counterclaim for breach of the Employment Agreement should be transferred to the Western District of Tennessee.

## A

Federal law governs whether the Forum Selection Clause is binding. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997) ("The proper law to apply to [enforceability of a forum selection clause] is federal, whether jurisdiction be based on diversity, a federal question, or some combination of the two."). "Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a '"heavy burden of proof."'" *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (quoting *Haynsworth*, 121 F.3d at 963). "Such clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (per curiam) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). A forum selection clause may be considered unreasonable if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Haynsworth*, 121 F.3d at 963). "To qualify as unreasonable, the fraud and overreaching must be specific to the forum selection clause." *Id.* (quoting *Haynsworth*, 121 F.3d at 963).

Evolve's compulsory counterclaim for breach of the Employment Agreement clearly constitutes a claim "arising out of or relating to [the Employment] Agreement," D. App. 8, and is within the scope of the Forum Selection Clause. Other than arguing that the Forum Selection Clause is invalidated by the Entire Agreement Clause of the Separation Agreement, Cortese does not contend that the Forum Selection Clause does not apply to Evolve's compulsory counterclaim for breach of the Employment Agreement or that it is unenforceable. Accordingly, the court turns to the public interest factors.

B

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues. The court concludes that this factor weighs slightly in favor of retaining the case in this district. Although Evolve points to evidence that the Western District of Tennessee has a substantially lower number of total cases and cases per judge, Cortese provides evidence that the Northern District of Texas generally reaches

civil cases for trial more quickly than does the Western District of Tennessee.

## C

The second public interest factor evaluates the local interest in the dispute. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc*., 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D. Tex. 2005)). Evolve contends that Cortese breached the Employment Agreement by becoming employed by American Southwest Mortgage Corp. ("American Southwest") prior to the effective termination of his employment with Evolve. These events occurred in Texas, and this factor therefore weighs in favor or retaining the case in this district.

## D

Under the third factor, the court considers the familiarity of the forum with the law that will govern the case. The Employment Agreement contains a choice-of-law provision stating that it is to be subject to and governed by the laws of the state of Tennessee. Although this court is capable of applying Tennessee law, a court sitting in Tennessee has greater familiarity with Tennessee law. *See Abramov v. Otis Elevator Co.*, 2011 WL 5081560, at *8 (N.D. Tex. Oct. 25, 2011) (Fitzwater, C.J.) (concluding that although court could apply Nevada law, court in Nevada would be more familiar with Nevada law). Accordingly, the court holds that this factor weighs in favor of transfer.

E

The fourth public interest factor considers the avoidance of unnecessary problems of conflict of laws or the application of foreign law. There is no suggestion in the briefing that there is a problem of conflict of laws or applying foreign laws. The court concludes that this factor is neutral.

F

"'[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 134 S.Ct. at 581 (second alteration in original) (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J. concurring)). "As the party acting in violation of the forum-selection clause, [Cortese] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id*. at 583.

> Because [the public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," such cases will not be common.

*Id*. at 582 (quoting *Stewart*, 487 U.S. at 30-31) (citation omitted).

As the party defying the forum selection clause, Cortese bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *See id*. at 581. Cortese has failed to meet his burden of demonstrating that this is an unusual and uncommon case in which the public interest factors overwhelmingly disfavor a transfer. The court therefore holds that Evolve's counterclaim should be transferred to the Western District

of Tennessee.

V

The court now considers whether Cortese's claims for breach of the Separation Agreement and quantum meruit should be transferred.

A

Cortese's claims for breach of the Separation Agreement and quantum meruit are not governed by the Forum Selection Cause. In cases where there is no forum selection clause,

> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer. The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc*., 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*" )).

B

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*" ); *see also Volkswagen II*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). Once the court resolves this issue, the court must in deciding whether to transfer the case evaluate "a number of

- 12 -

private and public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371 F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations omitted). "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. A defendant must establish "good cause" for transferring the case, meaning that, "in order to support its claim for a transfer, [it] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (quoting § 1404(a)) (alteration in original).

Because neither party disputes that Cortese could have filed this lawsuit in Tennessee, the court turns to the public- and private-interest factors.

## C

The first private interest factor examines the relative ease of access to sources of proof. Evolve contends that, given the personnel and accounting records and payroll practices involved in the dispute, many documents related to the claims at issue are located

at Evolve's headquarters in Memphis, Tennessee, and that Evolve is not aware of any significant portion of the documents located in the Northern District of Texas. Cortese responds that the Separation Agreement was signed in Texas and that documents related to the loans closed from August 1, 2014 through October 15, 2014—which form the underlying basis of the compensation due to Cortese under the Separation Agreement, or, alternatively, under quantum meruit—are located in Texas. Evolve replies by relying on language in the Separation Agreement that requires Cortese to deliver Confidential Information to Evolve at the end of the employment period. It maintains that any loan documentation that Cortese possesses constitutes Confidential Information, and that its Carrollton, Texas branch office was closed contemporaneously with Cortese's separation from Evolve, meaning that the office where Cortese worked no longer exists and that the records relevant to that office and to Cortese's employment are now at Evolve's headquarters in Tennessee.

The court concludes that this factor weighs in favor of transfer. "The Fifth Circuit [has] held that despite technological advances that [have] made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis." *AT & T*, 2009 WL 774350, at *2; *see also Volkswagen II*, 545 F.3d at 316 ("[T]he sources of proof requirement is a meaningful factor in the analysis."). Evolve's headquarters is located in Memphis; documentation relevant to this lawsuit, particularly payroll and accounting records and financial information relevant to Cortese's claims, are all located in Memphis; and, under the Separation Agreement, any Confidential Information, which would include information related to loans closed from August 1, 2014

- 14 -

through October 15, 2014, was to be returned to Evolve in Memphis upon the termination of Cortese's employment. Evolve no longer has an office or any records in Texas. And, other than Cortese, none of the potential witnesses with respect to Cortese's claim for breach of the Separation Agreement[4] resides in Texas; all are located in Memphis.

D

The second private interest factor examines the availability of compulsory process over witnesses. The court finds this factor to be neutral. In relation to Cortese's claim for breach of the Separation Agreement, neither party identifies any specific witnesses for whom compulsory process is necessary but unavailable.[5]

E

The third factor is the cost of attendance for willing witnesses. This factor "primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider parties' employees under third factor). A party seeking a transfer must "identify the 'key witnesses and the general content of their

---

[4]Cortese avers in his declaration that "[Evolve] alleges in its Counterclaim that I breached the Employment Agreement by working for [American Southwest]. This company is located in Dallas County, Texas, and all relevant witnesses and documents for my defense of this claim are located in Dallas County, Texas." P. App. 44. But he does not contend that any witnesses related to his claim for breach of the *Separation Agreement* reside in Texas.

[5]As explained *supra* at note 4, although Cortese states that the relevant witnesses for his defense of Evolve's counterclaim are located in Texas, he does not identify any witnesses with respect to his claim for breach of the Separation Agreement for whom compulsory process is necessary but unavailable.

testimony.'" *Sargent v. Sun Trust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One, N.A. v. Euro-Alamo Invs, Inc*., 211 F.Supp.2d 808, 812 (N.D. Tex. 2002) (Fitzwater, J.)). "The party seeking the transfer must identify . . . the key witnesses to be called, state their residence, and provide at least a general summary of what their testimony will cover." 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851, at 282-84 (4th ed. 2013); *see Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010) (Boyle, J.) (finding that defendant failed to show good cause for transfer based on this factor because it did not provide name, address, or proposed testimony of any witness who could more conveniently testify in the proposed transferee district). Although not determinative, this is the most significant factor in deciding a motion to transfer. *See Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc*., 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

Cortese resides in Texas but does not argue that he will call any other Texas witnesses in connection with his claim for breach of the Separation Agreement. Evolve contends that all of its potential witnesses reside in Tennessee. But because Evolve points to no witnesses other than its own employees for whom transfer will be more convenient, the court concludes that this factor weighs only slightly in favor of transfer. *USPG Portfolio Two*, 2011 WL 1103372, at *4.

The fourth private interest factor considers the practical problems that make trial easy, expeditious, and inexpensive. Because neither Cortese nor Evolve addresses this factor, the court finds it to be neutral.

G

The court has already addressed the public interest factors when analyzing whether to transfer Evolve's compulsory counterclaim for breach of the Employment Agreement. As explained above, *see supra* § IV(B)-(E), the first factor weighs in favor of retaining the case, the third factor weighs in favor of transferring the case, and the fourth factor is neutral. The court evaluated the second factor in the context of Evolve's counterclaim for breach of the Employment Agreement; it must now evaluate this factor in the context of Cortese's claims for breach of the Separation Agreement and quantum meruit.

Although the work for which Cortese claims he was not compensated was performed in Texas, decisions regarding Cortese's compensation were made in Tennessee, and the alleged breach occurred in Tennessee when Evolve failed to pay Cortese under the terms of the Separation Agreement. The court thus concludes that this factor is neutral.

H

Considering the foregoing factors holistically, the court holds that the Western District of Tennessee is a more convenient forum—although not necessarily a *clearly* more convenient forum—than the Northern District of Texas. Apart from the factors that are neutral, the first and third private interest factors, as well as the third public interest factor,

support transfer. On the other side of the ledger, the only factor weighing against transfer is the first public interest factor. This factor—the comparative administrative difficulties due to court congestion in the potential venues—which the court has evaluated based on averages and statistics, does not provide a meaningful reason to retain this case in this jurisdiction. This is especially the case where, as here, the claims are relatively uncomplicated and there is no suggestion that the three to four-month difference in the average time it takes to resolve or try cases in this district versus the Western District of Tennessee will have any significant impact on the resolution of the issues in this case. But given the apparent relative simplicity of this case, the number and location of the witnesses, and the nature of the evidence that can be expected to be produced and offered at trial, the court cannot say on the basis of the foregoing private and public interest factors that Evolve has met its significant burden of demonstrating that the Western District of Tennessee is *clearly* more convenient.

This does not end the court's analysis, however, because, "[a]lthough [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. The court can also consider other factors that bear on whether the case should be transferred for the convenience of parties and witnesses, in the interest of justice. *See generally In re Rolls Royce Corp.*, 775 F.3d 671, 689 (5th Cir. 2014) (discussing, *inter alia*, necessity for district court to weigh carefully whether inconvenience of splitting suit outweighs advantages to be gained from partial transfer under § 1404(a)).

As discussed above, Evolve's compulsory counterclaim for breach of the Employment Agreement is clearly governed by the Forum Selection Clause in the Employment

Agreement, and Cortese has not met his burden of demonstrating that the public interest factors overwhelmingly disfavor a transfer. If the court were to conclude that Cortese's claims for breach of the Separation Agreement and quantum meruit should remain in this forum, it would be necessary to sever and transfer Evolve's counterclaim for breach of the Employment Agreement (and the court would probably also transfer the counterclaim for breach of the Separation Agreement), while retaining Cortese's claims for breach of the Separation Agreement and quantum meruit. As a consequence, the parties would face the increased expense and inconvenience of litigating related cases—indeed, related claims and counterclaims—in two separate fora. And they would incur the risk of inconsistent outcomes on claims and counterclaims that are closely related. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A.*, 211 F.Supp.2d at 811 (citing *Stabler v. N.Y. Times* Co., 569 F. Supp. 1131, 1137 (S.D. Tex. 1983)). Severing Cortese's claims from Evolve's counterclaims and trying them as two separate cases in two separate fora would *not* further the goals of § 1404(a), especially where, as here, many material underlying facts overlap and the contracts on which the claims are based are part of a single relationship between the parties.

Accordingly, when the court adds to its consideration of the traditional, non-exclusive list of private- and public-interest factors a careful evaluation of the effect of severing and

transferring at least one (and probably both) of Evolve's counterclaims to the Western District of Tennessee and leaving Cortese's claims in this forum, the court is easily able to conclude the Western District of Tennessee is clearly the more convenient forum when compared to the Northern District of Texas.

\* \* \*

For the reasons explained, Evolve's motion to transfer venue is granted, and this case is transferred to the Western District of Tennessee, Memphis Division. The clerk of court shall effect the transfer according to the usual procedure.

**SO ORDERED**.

June 5, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE